Arnaldo **MONTERO**, Plaintiff,

v.

**C.O. CRUSIE, C.O. Montegari, C.O. O'Connor, C.O. Jones, C.O. Dimonda, Defendants.**

No. 98 Civ. 1282(CBM).

United States District Court, S.D. New York.

June 27, 2001.

Arnaldo Montero, Plaintiff, pro se.

Steven L. Banks, Eliot Spitzer, New York City, Attorney General for the State of New York, for Defendant.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

Arnaldo Montero, pro se plaintiff, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights under the Eighth and Fourteenth Amendments. Plaintiff seeks injunctive and declaratory relief and compensatory and punitive damages. Defendants now move for summary judgment. For the reasons that follow, this court GRANTS in part and DENIES in part defendants' motion for summary judgment.

## I. BACKGROUND [1]

Plaintiff is an inmate currently in the custody of the New York State Depart-

---

1. The following facts concerning this case are taken from the parties' moving papers. Although plaintiff has not submitted a Local Rule 56.1 Statement, he has submitted, in response to defendants' motion for summary judgment, a carefully drafted Answer to Defendants' Motion for Summary Judgment. Plaintiff's answer to defendants' motion contains a statement of allegedly material facts as to which plaintiff contends genuine issues ex-

ment of Correctional Services. During the alleged events relevant to this action, plaintiff was confined to the Special Housing Unit ("SHU") at Green Haven Correctional Facility ("Green Haven"). Defendants, Joseph Crusie, William O'Connor, Alfred Montegari, Michael Jones, and Scott Dimonda, are correctional officers employed at Green Haven. Plaintiff's allegations involve a number of different incidents at Green Haven, the facts of which are in dispute.

## A. The Torres Incident

Plaintiff alleges that on December 13, 1997, he was approached by an inmate named Torres soon after he and other SHU inmates entered the Green Haven recreation yard. Defendants Crusie and O'Connor allegedly released Torres into the yard and told him that if he "fights [plaintiff] it would be a good Christmas present." Pl.'s Mem. Law ¶ 5. At the time, Torres was prohibited from using the recreation yard at all with the other inmates. Plaintiff states that the prison surveillance camera posted in the recreation area recorded Torres' presence in the yard. No fight occurred between plaintiff and Torres. Plaintiff asserts that Torres filed a grievance with the Inmate Grievance Committee at Green Haven as a result of this incident. Defendants deny asking Torres to fight plaintiff.

## B. The Pushing Incident

Plaintiff alleges that on December 14, 1997, as defendants Jones and Dimonda escorted plaintiff back to his cell from the recreation yard, plaintiff observed defendant Crusie "throwing kisses" at him. Pl.'s

Mem. Law ¶ 11. Plaintiff became upset by Crusie's actions. Defendants deny that Crusie threw kisses at plaintiff.

While plaintiff was being escorted by defendants Jones and Dimonda but prior to reaching his cell, plaintiff removed his hand from his pockets and unzipped his trousers. In the area in front of his open cell, plaintiff turned around to face Jones and Dimonda and directed profane language at them. Upon seeing this disturbance, Crusie approached plaintiff and pushed him into his cell. Plaintiff alleges that as he fought for his balance in the cell, Jones pushed him further into the cell. Plaintiff asserts that as a result of Crusie's push, plaintiff's head hit the cell wall causing a migraine headache that lasted four days. Defendants disagree with plaintiff's rendition of the facts. They allege that before they could lock plaintiff in his cell, plaintiff charged Jones who responded by pushing plaintiff into his cell. A prison videotape surveillance camera, submitted as defendants' exhibit C, recorded part of the incident.

## C. The New Cell Incident

On December 18, 1997, plaintiff alleges that he became upset in the shower and started shouting because defendant Montegari ordered him to finish showering immediately. Defendants allege that plaintiff was ordered to exit the shower because his allotted ten-minute showering time had expired. Plaintiff states that although he was not wearing a watch, he could sense that his showering time had not yet expired. After becoming upset, plaintiff was escorted to a new cell on the orders of Sgt. Tierney.

ist. The court construes plaintiff's statements to be the equivalent of a Local Rule 56.1 Statement. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (stating that plaintiffs who proceed *pro se* are entitled to have their pleadings held to "less stringent standards than formal pleadings drafted by lawyers."); *see also Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

When he arrived at the new cell, plaintiff alleges that defendants Crusie and Montegari ignored his request to have his property brought to him there. Plaintiff responded by flooding his cell. Plaintiff alleges that defendants Crusie and Montegari then brought his property to him and placed the property in a puddle and threw old papers on top of the property. Plaintiff threw the papers on the floor, and as a result, plaintiff's property was taken away from him for a day. Plaintiff further alleges that he did not have bed sheets or running water during his first day in the new cell. Defendants deny that plaintiff requested his property prior to flooding his cell.

### D. Pat Frisking

Plaintiff alleges that on several occasions, as defendant Crusie pat frisked plaintiff, Crusie squeezed plaintiff's genitalia. Plaintiff also alleges that Crusie offered plaintiff various extra privileges, including extra food and extra shower time, in exchange for sexual favors. Plaintiff states that when he refused the offer, Crusie made a series of death threats to him. Defendant Crusie denies plaintiff's allegations.

### E. Rumors and Comments Concerning Plaintiff's Sexuality

Plaintiff also claims that defendants Crusie, O'Connor, and Montegari spread rumors throughout the Green Haven population that, among other things, plaintiff was a "homosexual and faggot" who "loves little boys" and "is doing time for rape." Pl.'s Mem. Law ¶ 26. Plaintiff alleges that defendants sometimes screamed these things out loud and sometimes said them loudly to plaintiff irrespective of who else was listening. Plaintiff claims that as a result of these rumors and statements, several inmates physically threatened or confronted plaintiff. Defendants deny spreading such rumors or making such statements.

### F. Misbehavior Reports and Disciplinary Hearings

Plaintiff alleges that defendants fabricated several Misbehavior Reports ("IMRs") about him and that two disciplinary hearings which resulted from the IMRs were conducted by a hearing officer who deprived plaintiff of a fair proceeding.

## II. DISCUSSION

The principles applicable to summary judgment are familiar and well-settled. According to the Federal Rules of Civil Procedure, summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing a prima facie case demonstrating the lack of a genuine issue of material fact. Once the moving party meets this burden, the non-moving party has the burden of providing enough evidence to support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. As a general rule, all ambiguities and all inferences drawn from the underlying facts must be resolved in favor of the party contesting the motion, and all uncertainty as to the existence of a genuine issue for trial must be resolved against the moving party. *See LaFond v. General Physics Servs. Corp.,* 50 F.3d 165, 171 (2d Cir. 1995). "Viewing the evidence produced in the light most favorable to the nonmovant,

if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

## A. The Pushing Incident

### 1. Plaintiff's Claims Against Crusie and Jones

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of his constitutionally protected rights, privileges, or immunities. *See* 42 U.S.C. § 1983.[2]

■ In § 1983 actions, "[p]ublic officials are entitled to qualified immunity from claims for damages if (1) their conduct did not violate federal statutory or constitutional rights that were clearly established at the time, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Brown v. City of Oneonta*, 106 F.3d 1125, 1130–31 (2d Cir.1997); *see also Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Where prison officials use force to resolve a prison disturbance, the question of whether the force was excessive, in violation of the Eighth Amendment, turns on whether it "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied sub nom., John v. Johnson*, 414 U.S. 1033,

94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Accordingly, a defendant prison official is entitled to summary judgment based on qualified immunity " 'if he adduces sufficient facts such that no reasonable jury, drawing all inferences and looking at the evidence in the light most favorable to the plaintiff, could conclude that it was objectively unreasonable for the defendant to believe' that he was not acting maliciously and sadistically for the very purpose of causing harm to the plaintiff." *Ramsey v. Busch*, 19 F.Supp.2d 73, 80 (W.D.N.Y. 1998) (*quoting Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987)).

Here, it is undisputed that plaintiff unzipped his pants as he approached his cell and then turned around to face defendants Jones and Dimonda as he directed profanities at them. Although plaintiff claims that he did not actually threaten defendants, the videotape of the events is less than clear on this point. *See* Defs.' Ex. C. The confrontation escalated and then ended rapidly and with some confusion. It is clear that at some early point, despite his claim to the contrary, plaintiff raised his fist at defendants. *See id.* Furthermore, it appears that plaintiff was not pushed with a degree of force disproportional to that necessary to compel him to enter the cell. *See id.* It is impossible to conclude that defendants Jones and Crusie were objectively unreasonable to believe that they were not acting maliciously and sadistically for the very purpose of causing harm to plaintiff. Therefore, defendants Jones and Crusie are entitled to qualified immunity for their actions in the pushing

---

**2.** Section 1983 of Title 42 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States

... to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

incident and their motion for summary judgment as to this claim is granted.

### 2. Plaintiff's Claims Against O'Connor, Montegari, and Dimonda

As a prerequisite to a § 1983 claim, "a defendant must have personal involvement in the alleged deprivation of the constitutional right." *Pearson v. Principe*, No. 97 Civ. 3746, 1999 WL 66521, at *1 (S.D.N.Y. February 9, 1999); *see also Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986). Plaintiff neither alleges nor sets forth affirmative facts showing that any other defendants were involved in the physical confrontation outside of his cell. Therefore, plaintiff's claim of excessive force with regard to the pushing incident is dismissed as to defendants O'Connor, Montegari, and Dimonda.

### B. New Cell Incident and Pat Frisking

The Eighth Amendment prohibits "cruel and unusual punishment" in the course of incarceration. *See* U.S. Const. amend. VIII. To show a violation of the Eighth Amendment pursuant to § 1983, an inmate must establish that the deprivation of which he is complaining is "sufficiently serious" to constitute cruel and unusual punishment, and that a defendant's actions in allowing the deprivation must have amounted to deliberate indifference to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Second Circuit has set forth the requisite showing as follows:

First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if

he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir.1996) (citations omitted).

None of plaintiff's allegations with respect to the new cell incident or the pat frisking involve a harm of federal constitutional proportions as defined by the Supreme Court. *See Farmer*, 511 U.S. at 833–34, 114 S.Ct. 1970; *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir.1997) (finding that a small number of incidents of alleged sexual touching and harassment was insufficient to state a claim under the Eighth Amendment); *Ramirez v. Holmes*, 921 F.Supp. 204, 208 (S.D.N.Y.1996) (holding that denial of a shower for an inmate on three occasions failed to state an Eighth Amendment claim). Plaintiff does not allege that his property was damaged as a result of the new cell incident or that he was even deprived of his property for more than a single day. Nor does he allege that he was injured as a result of the pat frisking. Accordingly, plaintiff does not show a sufficiently serious deprivation resulting from either incident to make out an Eighth Amendment claim. Furthermore, these episodes do not collectively amount to an Eighth Amendment violation, since "nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Therefore, plaintiff's claims with respect to the new cell incident and the pat frisking are dismissed.

### C. Misbehavior Reports and Disciplinary Hearings

Plaintiff claims that his due process rights were violated when defen-

dants Montegari and Crusie submitted three false IMRs that resulted in plaintiff being disciplined. It is well-settled that in the absence of retaliation or a constitutionally defective hearing, an "inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986); *see also Greaves v. New York,* 958 F.Supp. 142, 144 (S.D.N.Y.1997) ("the failure to conduct a constitutionally adequate disciplinary hearing may give rise to a Section 1983 action, but the mere filing of a false misbehavior report against an inmate does not.").[3]

 Plaintiff further claims that the two disciplinary hearings that resulted from these reports were constitutionally defective because they violated his due process rights. Although plaintiff asserts that the hearing officer who conducted both proceedings was "unfair, partial, and biased," and that "he deprived [plaintiff] of a proper hearing," (Pl.'s Mem. Law ¶ 10), plaintiff neither alleges nor sets forth affirmative facts showing that defendants in this case were personally involved in the alleged deprivation of his rights at the disciplinary hearings. *See Bass,* 790 F.2d at 263. Accordingly, this claim is dismissed.

## D. Death Threats Associated with Pat Frisking and Other Verbal Harassment

 Plaintiff claims that defendants occasionally harassed and threatened him

during his incarceration at Green Haven, including Crusie's alleged sexual solicitations and alleged death threats. Verbal threats or harassment, unless accompanied by physical force or the present ability to effectuate the threat, are not actionable under § 1983. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Amaker v. Goord,* No. 98 Civ. 3634, 1999 WL 511990, at *10 (S.D.N.Y. July 20, 1999) ("such verbal harassment 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and is therefore not actionable under 42 U.S.C. § 1983.'") (*quoting Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998)).

Because plaintiff has alleged only verbal abuse without any physical injury or damage, summary judgment on this claim is granted.

## E. Plaintiff's Claims for Declaratory and Injunctive Relief for Defendants' Attempted Incitement of Physical Confrontation Between Inmates

### 1. The Torres Incident

 Plaintiff claims that on December 13, 1997, defendants Crusie and O'Connor released inmate Torres into the recreation yard with plaintiff and tried to incite Torres to fight plaintiff. Defendants deny asking Torres to fight plaintiff.

 Prison officials have a duty, under the Eighth Amendment, " 'to protect inmates from violence at the hands of

---

**3.** However, a § 1983 claim based upon a false misbehavior report survives dismissal when the disciplinary hearing that results is not constitutionally sufficient and the false report is alleged to be retaliation for the inmate's exercise of other constitutional rights. *See Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995). Plaintiff does not allege retaliation in this case.

other inmates.'" *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (*quoting Farmer,* 511 U.S. at 833, 114 S.Ct. 1970). Prison officials who fail to act reasonably to ensure a safe environment for a prisoner, when they are aware that there is a significant risk of injury to that prisoner, violate that prisoner's rights whether or not an attack actually occurs. *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997). Furthermore, where, as here, no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the harassment itself may also be sufficient evidence of a malicious and sadistic state of mind. *See Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Because genuine issues of material fact exist concerning defendants' role in attempting to incite a fight between plaintiff and Torres, summary judgment on plaintiff's claim for declaratory and injunctive relief is denied as to defendants Crusie and O'Connor.

However, because plaintiff does not allege or set forth any facts showing that defendants Jones, Dimonda, or Montegari played any role in attempting to incite a fight between inmate Torres and plaintiff, summary judgment on plaintiff's claim for declaratory and injunctive relief based upon the Torres incident is granted as to defendants Jones, Dimonda, and Montegari. *See Bass,* 790 F.2d at 263.

### 2. Rumors and Comments Concerning Plaintiff's Sexuality

■ "In the prison context in which [plaintiff] was required to live, one can think of few acts that could be more likely to lead to physical injury than spreading rumors of homosexuality." *Thomas v. District of Columbia,* 887 F.Supp. 1, 4 (D.D.C.1995).

Plaintiff claims that defendants Crusie, O'Connor, and Montegari spread rumors throughout the Green Haven population indicating that plaintiff was gay, was a child molester, and was a rapist. Plaintiff claims that as a result of these rumors, he was twice confronted by inmates and once threatened with bodily harm. Defendants deny spreading these rumors.

In light of the genuine issues of material fact concerning defendants' role in spreading the rumors, summary judgment on plaintiff's claim for declaratory and injunctive relief is denied as to defendants Crusie, O'Connor, and Montegari.

However, because plaintiff does not allege or set forth any facts showing that defendants Jones or Dimonda played any role in spreading the alleged rumors, summary judgment on plaintiff's claim for declaratory and injunctive relief based upon the spreading of rumors is granted as to defendants Jones and Dimonda. *See Bass,* 790 F.2d at 263.

### F. Plaintiff's Claims for Compensatory and Punitive Damages for Defendants' Attempted Incitement of Physical Confrontation Between Inmates

■ Defendants argue that plaintiff's claims for compensatory and punitive damages should be dismissed under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Plaintiff claims that he suffers from severe stress and depression as a result of defendants' alleged spreading of rumors about him. In addition, plaintiff claims that he has suffered psychological pain as

a result of Crusie's and O'Connor's attempt to instigate a physical confrontation with Torres.

 Because plaintiff has failed to allege a palpable physical injury in conjunction with his claims for mental and emotional suffering, plaintiff's claims for damages are barred under § 1997e(e). Summary judgment is therefore granted with regard to plaintiff's claims for compensatory and punitive damages.[4]

## III. CONCLUSION

For the foregoing reasons, summary judgment is hereby DENIED on plaintiff's claims for declaratory and injunctive relief based upon (1) his Eighth Amendment claim concerning the alleged attempt of defendants Crusie and O'Connor to incite a physical confrontation between Torres and plaintiff and (2) his Eighth Amendment claim concerning the alleged attempt by defendants Crusie, O'Connor, and Montegari to incite physical confrontation between inmates by spreading rumors about plaintiff's sexuality. Summary judgment is hereby GRANTED as to the rest of plaintiff's claims.

---

**4.** Plaintiff may nevertheless seek declaratory and injunctive relief for his two Eighth Amendment claims regarding defendants' alleged attempts to incite a physical confronta-tion between other inmates and himself. *See Amaker*, 1999 WL 511990, at *5 (" § 1997e(e) does not bar a plaintiff from seeking injunctive or declaratory relief.").