**Richard KEMNER, Plaintiff,**

v.

**Captain HEMPHILL, Defendant.**

No. 4:00–cv–24.

United States District Court,
N.D. Florida.

May 3, 2002.

Clyde M. Taylor, Jr., Clyde M. Taylor, III, Clyde M Taylor, Jr., PA, Tallahassee, FL, for plaintiff.

Richard Kemner, Blountstown, FL, pro se.

Kelly Overstreet Johnson, Broad & Cassel, Tallahassee, FL, Caryl Sue Kilinski, Attorney General, Tallahassee, FL, Joe Belitzky, Office of the Attorney General, Tallahassee, FL, Laureen Ella Galeoto, Broad & Cassel, Tallahassee, FL, for defendant.

## ORDER

SHERRILL, United States Magistrate Judge.

This case is before me upon consent of the parties and referral by the district judge. Defendant has filed a memorandum of law, doc. 93, which will simultaneously be construed as a motion for partial judgment on the pleadings. Defendant contends that Plaintiff's claim for compensatory and punitive damages cannot survive the "physical injury" requirement of the PLRA, 42 U.S.C. § 1997e(e). That statute provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Plaintiff has responded. Doc. 95.

Prior to the enactment of § 1997e(e), the United States Supreme Court had twice considered the kinds of injury which will support an award of compensatory damages for violation of constitutional rights. The cases are *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) and *Memphis Comm. Sch. Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Summarizing these cases, the Eleventh Circuit has noted that "compensatory damages under § 1983 may be awarded only based on actual *injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant

violated." *Slicker v. Jackson,* 215 F.3d 1225, 1229 (11th Cir.2000) (emphasis by the court), *citing Stachura,* 477 U.S. at 309–310, 106 S.Ct. at 2544, and *Carey,* 435 U.S. at 264, 98 S.Ct. at 1052. "*Carey* and *Stachura* plainly require that compensatory damages in a § 1983 suit be based on actual injury caused by the defendant rather than on the 'abstract value' of the constitutional rights that may have been violated." 215 F.3d at 1230. "Actual injury," however, is not the same as "physical injury," and includes emotional injury standing alone. "Actual" injuries typically are physical, emotional, or fiscal in character. *Id.,* at 1231. Nominal damages may still be recovered even though there are no compensable damages. *Id., citing Carey,* 435 U.S. at 266, 98 S.Ct. at 1054. This was the legal landscape which preceded the enactment of § 1997e(e).

*Harris v. Garner,* 216 F.3d 970 (11th Cir.2000), *reinstating in part* 190 F.3d 1279 (11th Cir.1999), is this circuit's most significant case construing § 1997e(e). In *Harris v. Garner,* 190 F.3d 1279, *supra* (hereinafter *"Harris I"*),[1] several prisoners brought suit alleging Fourth, Eighth, and Fourteenth Amendment due process claims arising from searches conducted by prison officials. 190 F.3d at 1282. The court considered: (1) whether § 1997e(e) applied to litigants who were in prison at

the time they filed their claims concerning injuries suffered while incarcerated but who were subsequently released before a decision was made;[2] (2) whether § 1997e(e) required exhaustion even if it would be futile; (3) the level of injury necessary to sustain a claim under § 1997e(e)'s physical injury requirement; and (4) the constitutionality of § 1997e(e). *Harris I,* 190 F.3d at 1282. As for the last three issues, the court held that: (1) exhaustion was required even if going through the procedures was futile; (2) physical injury analysis should use the Eighth Amendment standard in considering the level of injury that must be alleged for § 1997e(e) purposes; in other words, injury "must be more than *de minimis,* but need not be significant;" and (3) the damages limitation of § 1997e(e) does not offend the Due Process Clause, the Equal Protection Clause, or violate an inmate's right of access to the courts. 190 F.3d at 1290.[3]

Thus, the most significant question posed by the wording of § 1997e(e), that "[n]o Federal civil *action* may be *brought,*" has been resolved in this circuit. Despite the way it is worded, the statute limits the types of relief, not causes of action. If there is no "physical injury" alleged, then mental or emotional monetary damages, as well as punitive damages, cannot be recov-

---

1. *Harris v. Garner,* 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir.2000), *cert. denied* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). The parts of the panel opinion relevant to this legal issue were reinstated.

2. The first issue, whether the physical injury requirement of the PLRA applies to lawsuits filed while a plaintiff was incarcerated, but whose case was not decided until after his release from prison, was resolved in the later case of *Harris v. Garner,* 216 F.3d 970, 972 (hereinafter *"Harris II"*). That part of the court's opinion is not relevant.

3. The court also ruled that § 1997e(e) did not preclude actions for declaratory or injunctive relief. *Harris I,* 190 F.3d at 1288 (citations omitted) (stating "[w]e therefore join the other circuits who have considered the issue in holding that section 1997e(e) only precludes some actions for money damages, and does not materially thwart actions for declaratory and injunctive relief."). That position remained intact following *Harris II,* 216 F.3d at 988, n. 5 (Tjoflat, J., dissenting), *citing Harris I,* 190 F.3d at 1287–89 ("42 U.S.C. § 1997e(e) only precludes prisoners from bringing actions for compensatory and punitive damages. It does not apply to actions for declaratory or injunctive relief.").

ered, but declaratory and injunctive relief may be available.

The issue here, therefore, is whether Plaintiff alleges "physical injury" of the type Congress intended in § 1997e(e). The amended complaint alleges that Plaintiff had advised Defendant that he was being harassed and threatened by inmates in his dormitory. Doc. 13. Plaintiff alleges he was not moved from his cell despite several requests to do so, and during the night of May 30, 1998, another inmate (Upshaw) came into Plaintiff's cell and directed Plaintiff's cellmate to leave. While the cellmate was gone, Plaintiff was sexually assaulted by Upshaw for nearly two hours and he forced Plaintiff to perform oral sex on him. Plaintiff alleges that he "suffered physical pain, cuts, scrapes, and bruises," as well as "mental anguish, fright, and shock, embarrassment, humiliation and mortification, in addition to psychological injuries that are permanent." Doc. 13, p. 10.

Additional evidence presented in this case reveals that when inmate Upshaw came into Plaintiff's cell he "began to kiss and rub up against" Plaintiff. Doc. 30, ex. C, p. 3. When Plaintiff was forced to perform oral sex on Upshaw, he "ejaculated and this caused [Plaintiff] to throw up." *Id.* Following the assault, Plaintiff's cellmate was returning to the cell and while approaching, heard Plaintiff vomiting. *Id.; see also* doc. 55, exhibits 1, E.

The next day, at approximately 12:30 in the afternoon, another inmate saw Plaintiff hiding in another cell. Doc. 55, ex. D. Plaintiff appeared to be in shock. That inmate told Plaintiff to wait in the cell while he went to get the Captain. *Id.* Plaintiff was then taken to the medical department and subsequently transferred to another institution for his protection. Doc. 30, ex. C, p. 1.

Defendant contends that being "forced to perform oral sex upon another [male] inmate" is "analogous to body cavity searches performed upon inmates by prison officials." Doc.93, p. 4. Defendant cites a number of cases which have held visual body cavity searches, strip searches, and frisks do not constitute "physical harm." *Id.*

*Pursley v. DeTella*, No. 97–4197, 2000 WL 262626 (7th Cir. Mar. 3, 2000) is one of these cases. It held that a claim that a body cavity search was not "unreasonable" under Fourth Amendment and, thus, failed to state a Fourth Amendment claim at all. 2000 WL 262626, at *2, *citing Bell v. Wolfish*, 441 U.S. 520, 558–560, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).[4] To the degree the inmate attempted to argue an Eighth Amendment claim for the first time on appeal, the court noted that he "never alleged that he suffered any physical injury; he only alleged that the defendants' actions caused him to suffer mental and emotional distress." *Id.*, at *3. Thus, the court concluded that his Eighth Amendment claim was barred by 42 U.S.C. § 1997e(e).

This unpublished decision, however, does not say that any physical contact was made with the inmate, and it is assumed that the search was visual only as the court relied upon *Bell v. Wolfish*. Since reasonable visual body cavity searches are permissible for security purposes, the case is not on point. Other cases of this sort are similarly inapposite. *Wilson v. Shannon*, 982 F.Supp. 337, 339–340 (E.D.Pa. 1997) (holding that strip search with no physical contact at all was not a valid Fourth or an Eighth Amendment claim),

---

4. *Bell v. Wolfish* held that a reasonable visual body cavity search of a pretrial detainee without probable cause does not violate the Fourth Amendment.

*Montero v. Crusie,* 153 F.Supp.2d 368, 377–378 (S.D.N.Y.2001) (allegations concerning "pat frisking" failed to state a claim under the Eighth Amendment).[5]

In *Seaver v. Manduco,* 178 F.Supp.2d 30 (D.Mass.2002), the court dismissed the plaintiffs' claims of harassment under the authority of § 1997e(e) where the harassment was "primarily if not entirely verbal" in nature. 178 F.Supp.2d at 37. Although dismissing the claims as alleged, the court noted the possibility that the nature and consequences of discriminatory harassment could potentially "permit recovery of damages against defendants in their individual capacities even where no physical injury is proved." *Id.* As to plaintiffs' claims concerning a visual cavity search, the court was troubled by the extent of the invasion of privacy alleged, but ultimately concluded that it need not interpret § 1997e(e) because qualified immunity was applicable. *Id.,* at 37–38. This case, therefore, did not determine the application of § 1997e(e) to a visual body cavity search.

Defendant has also cited *Liner v. Goord,* 196 F.3d 132 (2d Cir.1999), seeking to distinguish it. There, the court reversed the lower court's dismissal of a claim that defendant had "a policy or practice that permits corrections officers to conduct *intrusive* body searches without 'therapeutic supervision.'" 196 F.3d at 135 (emphasis added). Characterizing these searches as "sexual assaults," the Second Circuit concluded that the district court failed to consider that sexual abuse was a potentially viable claim under the Eighth Amendment. *Id., citing Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997).

Secondly, the court held that § 1997e(e) did not bar the claims. *Id.* "[A]ccepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense. Certainly, the alleged sexual assaults would constitute more than de minimis injury if they occurred." *Id.*

Defendant contends that "[t]he *Liner* opinion, however, is best viewed in light of a previous decision of the Second Circuit, *Boddie v. Schnieder.*" Doc. 93, p. 5. The allegations in *Boddie* were that a female correctional officer made passes at a male inmate by pressing her body up against his, and on another occasion, "squeezed his hand, touched his penis, and said, '[Y]ou know your [sic] sexy black devil, I like you.'" 105 F.3d at 859–860. The court agreed with the district court that the "isolated episodes of harassment and touching" were not violative of the Eighth Amendment.

Defendant points to *Boddie's* recognition that sexual abuse allegations *"may* state an Eighth Amendment claim" but not *"every* allegation of sexual abuse" will be sufficient. 105 F.3d at 860–861. That certainly is true as a matter of Eighth Amendment jurisprudence. But the statement does little to explain why Plaintiff's claims are insufficient under § 1997e(e). The issue here is not whether Plaintiff has stated an Eighth Amendment claim.

Moreover, the statement in *Boddie* was to explain that the district court had "expressed some doubt as to whether a prisoner's claim for sexual abuse could lie under Section 1983." *Id.,* at 860. The court simply clarified that a claim might exist:

---

5. Additionally, in *Montero,* the court held that, as to the only surviving claim (that defendants allegedly spread rumors about plaintiff subjecting him to possible inmate-on-inmate violence), the prisoner alleged only psychological pain and not "a palpable physical injury in conjunction with his claims for mental and emotional suffering," and therefore the plaintiff's claims for damages were barred by § 1997e(e). 153 F.Supp.2d at 377–378. This is not helpful in the case at bar, however, as Plaintiff here alleges that inmate violence actually occurred.

We note that there is nothing in the decisions of the Supreme Court or of this court that denies the existence of such a claim and there is, instead, much to support it. We therefore conclude that sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment.

*Id.*, at 860–861.

It is further noteworthy that one specific example given in *Boddie* of such a viable Eighth Amendment sexual abuse claim was the following: "Moreover, like the rape of an inmate by another inmate, sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.*, at 861, *citing Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).

Defendant also cites to cases in support of the argument that Plaintiff's alleged injuries of cuts, scrapes, bruises, and vomiting were not serious enough to require medical treatment, and thus not adequate to allege physical injury for purposes of § 1997e(e). The first held that a claim that bodily fluids which were thrown on an inmate was insufficient under § 1997e(e). *Evans v. Allen*, 981 F.Supp. 1102 (N.D.Ill. 1997). There, the court found:

> Evans has not alleged that he has suffered any physical injury. In fact, the only alleged physical contact which Evans alleges is that he had "bodily fluids thrown on [him]." This is insufficient to satisfy § 1997e(e). Thus, the court finds that Evans is precluded from recovering for his claims of mental and emotional injury pursuant to section 1997e(e) unless Evans can show that he suffered a prior physical injury.

981 F.Supp. at 1109. The case at bar, in contrast, alleges forced offensive physical contact and resultant physical injury, including vomiting, cuts, scrapes, and bruises.

The second case which Defendant cites is another unpublished opinion, *Johnson v. Ward*, No. 99–1596, 2000 WL 659354 (6th Cir. May 11, 2000), in which inmate Johnson alleged that a correctional officer "(1) placed his hand on Johnson's buttocks; (2) told Johnson that he had put sperm in his food; [6] and (3) made an offensive sexual remark to him." *Johnson*, 2000 WL 659354, at *1. The court held that the first and third allegations, whether construed as sexual harassment or excessive force, did "not rise to the level of a constitutional violation." *Id. Johnson* is not persuasive, however, as it lacks any discussion of the physical injury requirement of § 1997e(e), and a minor offensive sexual touching is a far cry from a sexual battery.

The only authority cited by Defendant which is directly on point is an unpublished decision from the United States District Court for the Southern District of Florida. Doc. 93, attachment; *Wing v. Quigley*, case no. 96–8328–CIV–GOLD (S.D.Fla., Mar. 26, 2001). That case involved a claim that a male inmate had been forced to have "sexual copulation and oral intercourse" with a female correctional officer. *Id.* The jury had awarded compensatory damages to the prisoner, but the verdict damage award was set aside. The court found that Plaintiff had failed to prove "any physical injury at all, let alone a de minimis injury." *Id.*, p. 2. The court relied upon the prisoner's trial testimony where, in answer to the question of whether engaging in sex with the female correctional officer was painful, he answered: "No, not

6. The contaminated food allegation failed on summary judgment for lack of evidence.

2000 WL 659354, at *2.

physically, but mentally, just not being able to—just being so afraid that I couldn't get an erection from being so afraid is all." *Id.,* p. 2, n. 2. The court further wrote, "Even if the evidence could be characterized as involving a de minimis physical injury by virtue of unwelcome sexual contact, it was not the sort of physical force, given all the circumstances, that is 'repugnant to the conscience of mankind.'" *Id.,* p. 2.

In summary, on the one hand, cases involving visual body cavity searches typically involve no physical intrusion and no physical injury at all. Those are the easy cases, as those typically fail to state a constitutional claim. The courts are troubled, however, where offensive bodily intrusion or sexual touching is involved.

There is no question that "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan,* 511 U.S. at 834, 114 S.Ct. at 1977, *quoting Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399; *Farmer,* 511 U.S. at 852, 114 S.Ct. at 1986 (Blackmun, J., concurring) ("[h]omosexual rape or other violence among prison inmates serves ab-

solutely no penological purpose."). "Such brutality is the equivalent of torture, and is offensive to any modern standard of human dignity." *United States v. Bailey,* 444 U.S. 394, 423, 100 S.Ct. 624, 641, 62 L.Ed.2d 575 (1980) (Blackmun, J., dissenting), *cited in Farmer,* 511 U.S. at 852–53, 114 S.Ct. at 1987.[7]

*Harris v. Garner* left open the question of "whether de minimis uses of physical force might satisfy section 1997e(e) if they [were] of the sort 'repugnant to the conscience of mankind'" because the issue was not presented in that case. 190 F.3d at 1287, n. 7. While the Eighth Amendment's "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force," it does so to the extent the "force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992), *citing Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), and *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

Sexual battery is a serious felony in Florida.[8] Fla.Stat. § 794.011. The Florida

---

**7.** Numerous cases have held that claims of sexual assault, sexual abuse, and rape in prison may give rise to valid Eighth Amendment claims. *E.g., Mathie v. Fries,* 935 F.Supp. 1284 (E.D.N.Y.1996) (finding that sexual abuse and sodomy violates "all contemporary standards of decency" and "were a competing producing cause of physical and emotional injury"), *citing Thomas v. District of Columbia,* 887 F.Supp. 1, 4 (D.D.C.1995); *Women Prisoners of District of Columbia Dept. of Corrections v. District of Columbia,* 93 F.3d 910, 929 (D.C.Cir.1996), *cert. denied* 520 U.S. 1196, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997); *Little v. Walker,* 552 F.2d 193, 197 (7th Cir.1977), *cert. denied* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978) (stating, "[v]iolent attacks and sexual assaults by inmates upon the plaintiff while in protective segregation are manifestly 'inconsistent with contemporary standards of decency.'"), *citing*

*Holt v. Sarver,* 442 F.2d 304, 308 (8th Cir. 1971); *Berg v. Kincheloe,* 794 F.2d 457 (9th Cir.1986); *Redman v. County of San Diego,* 942 F.2d 1435 (9th Cir.1991), *cert. denied* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

**8.** It is a life felony if there was a use of actual physical force likely to cause serious personal injury. Fla.Stat. § 794.011(3). It is a first degree felony if there was a threat to use force likely to cause serious personal injury or a believable threat of retaliation. Fla.Stat. § 794.011(4)(b) and (c). It is a second degree felony in other cases and may be punished by a term of imprisonment up to 15 years. Fla Stat. §§ 794.011(5) and 775.082(3)(a)3.(c). Even this last and lesser form of sexual battery is treated as a level 8 offense, where 10 is the most severe. Fla.Stat. § 921.0022(3).

sentencing guidelines assign 120 victim injury points where death occurs (other than a second degree murder), and 80 points where there has been sexual penetration of the victim, reflecting that sexual penetration is two thirds as harmful in the eyes of the citizens of Florida as an offense (other than second degree murder) which results in death. FLA.STAT. § 921.0024(1)(a), victim injury table. There can be no quarrel with the proposition that death is physical injury. Plaintiff alleges penetration as he alleges he vomited when his assailant ejaculated into his mouth.

Defendant, of course, is not alleged to have committed felony sexual battery, but only to have violated Plaintiff's Eighth Amendment right not to be a victim of this sort of injury. But the court's focus here is not upon what Plaintiff alleges that Defendant did or did not do, but on whether Plaintiff has suffered a "physical injury" as intended by § 1997e(e). Following the issue left undecided in *Harris v. Garner*, the way in which Florida has categorized the offense for criminal law purposes is persuasive authority for the court's analysis of whether the injury suffered by Plaintiff is "repugnant to the conscience of mankind" as that phrase is used to interpret the scope of the Eighth Amendment. There can be no question, therefore, that sexual battery is an extreme act of violence to human dignity, and that sexual battery involving penetration is "repugnant to the conscience of mankind."

Sexual battery often involves more than a *de minimis* use of force. But where only fear and intimidation are used, it might appear that no physical force is present. But that is error. A sexual battery involves, at a minimum, the physically forceful activity of the assailant. Copulation requires movement. It is alleged here that there was "physical force" as those

words were used in the footnote in *Harris*. The penetration of Plaintiff's mouth was an act of force, and there may have been other kinds of "physical force" used, though not alleged. This kind of physical force, even if considered to be *de minimis* from a purely physical perspective, is plainly "repugnant to the conscience of mankind." Surely Congress intended the concept of "physical injury" in § 1997e(e) to cover such a repugnant use of physical force.

There is some support for that view. *Marrie v. Nickels*, 70 F.Supp.2d 1252 (D.Kan.1999); *Mathie*, 935 F.Supp. at 1300. *See also Liner*, 196 F.3d at 135 (characterizing an intrusive body search as a sexual assault). In *Marrie v. Nickels*, two of the plaintiffs were permitted to seek compensatory and punitive damages for sexual assault claims. 70 F.Supp.2d at 1264. The court, persuaded by the decision in *Liner*, held that sexual battery would qualify as "physical injury" for purposes of § 1997e(e). *Id.* In doing so, the court implicitly rejected the Fifth Circuit's imposition of a "more than *de minimis*" injury standard of the "Eighth Amendment's standards for determining whether a prisoner has suffered the requisite 'physical injury.'" *Id.*

This bridge need not be crossed in this case, however. In *Styles v. McGinnis*, 2001 WL 1667273, *2, 28 Fed.Appx. 362 (6th Cir. Dec. 26, 2001), the plaintiff alleged that a doctor had conducted an unnecessary rectal examination to which he did not consent and that two prison guards held him down for the doctor to perform the exam. 2001 WL 1667273, at *2. Presumably this examination involved a physical intrusion. But whether or not it did, the court found that the record supported the plaintiff's "claim of [physical] injury as the rectal examination resulted in in-

The other two are assigned to levels 10 and 9, respectively.

creased blood pressure, chest pain, tachycardia, and numerous premature ventricular contractions." *Id.* The court held that this was an adequate allegation of physical injury to survive "a motion to dismiss under § 1997e(e)." *Id.*

Likewise, in *Wolfe v. Horn*, 130 F.Supp.2d 648 (E.D.Pa.2001), the plaintiff was a pre-operative transsexual who had been taking prescription hormones prior to being incarcerated. Upon her confinement, the hormone therapy was discontinued. The prisoner claimed "that after her hormones were withdrawn, she suffered headaches, nausea, vomiting, cramps, hot flashes, and hair loss .... reduced breast size, increased body hair, and lowered voice pitch." 130 F.Supp.2d at 658. Because of "the re-emergence of masculine physical characteristics, [the plaintiff] became depressed and suicidal." *Id.* The court held that "the alleged constitutional violations caused direct physical injuries, with attendant emotional consequences" and denied the summary judgment motion based on the physical injury requirement of § 1997e(e). *Id.*

Plaintiff here alleges physical injury which is more than *de minimis*. He alleges that he was sexually assaulted for two hours, suffered cuts, bruises and abrasions, and he was so physically ill that he vomited. He alleges that a witness would testify that he was in shock for hours afterwards. Any physical force which causes the human body to convulse in vomiting and to go into shock has caused a physical injury as intended by § 1997e(e).

For these reasons, it is **ORDERED** that Defendant's motion for partial judgment on the pleadings, doc. 93, is **DENIED.**